**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **HAMILTON W. SHOOP,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 13-1707** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Hamilton W. Shoop ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 14), Defendant's Motion for Summary Judgment (ECF No. 16), and Plaintiff's Reply Memorandum (ECF No. 17).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 16) is

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

**GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 14) is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

# I

## Background

Plaintiff was born in 1952, has a high-school education, and previously worked as an estimator, service dispatcher, and manager of an HVAC company.  R. at 21.  Plaintiff applied for DIB on December 21, 2011, and for SSI protectively on May 16, 2012, alleging disability beginning on November 21, 2011, due to hearing loss.  R. at 13, 158-59, 173.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 69-96, 98-99, 101-04.  On January 14, 2013, ALJ Robert W. Young held a hearing in Baltimore, Maryland, at which Plaintiff and a vocational expert ("VE") testified.  R. at 28-68.  On March 21, 2013, the ALJ issued a decision finding Plaintiff not disabled since the alleged onset date of disability of November 21, 2011. R. at 10-27.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on May 1, 2013. R. at 1-9.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On June 13, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

### Summary of Evidence

**A.      State Agency Medical Consultants**

On February 14, 2012, A.R. Totoonchie, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 74-75.  Dr. Totoonchie opined that, although Plaintiff had a communicative limitation due to "moderate to severe sensorineural hearing loss with good word recognition bilaterally," he had no exertional, postural, manipulative, visual, or environmental limitations.  R. at 74-75.

On May 29, 2012, W. Hakkarinen, M.D. also assessed Plaintiff's RFC and opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 83.  He could never climb ladders, ropes, or scaffolds because of hearing loss, but could perform unlimited balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs.  R. at 83. In addition to his communicative limitation, Plaintiff's environmental limitations included avoiding concentrated exposure to noise and hazards such as machinery and heights.  R. at 83-84.  Plaintiff had no manipulative or visual limitations, however.  R. at 83.

**B.      Hamid Ehsani, M.D. (WeCare Comprehensive Family Medicine, LLC)**

The ALJ summarized Dr. Ehsani's findings in his decision:

Treatment notes from Dr. Hamid Ehsani, at We Care Family Medical Center dated April 9, 2012, indicated [Plaintiff's] physical examination was within normal limits.  [Plaintiff's] diabetes mellitus was without mention of complication type II or uncontrolled.  Diagnosis included unspecified essential hypertension, hyperlipidemia, and rash/other nonspecific skin eruption.

. . . .

Treatment notes from Dr. Ehsani indicated [Plaintiff's] examinations on April 26, 2012 and May 15, 2012, were within normal limits. Psychiatric review of symptoms noted history of claustrophobia, fear of heights, and difficulty driving through tunnels. [Plaintiff] ambulated with steady gait, and 5/5 strength was noted in all extremities, bilaterally. There was no pitting edema, and sensory/motor grossly intact. [Plaintiff] had a skin rash on forehead, nose, and bilateral cheeks that resolved. Diagnosis included unspecified essential hypertension, diabetes mellitus without mention of complication or not controlled, hyperlipidemia, rosacea, and malaise/fatigue. Routine follow-up examinations and medication checks in July [sic], July, August, and September, were unremarkable.

Office visit dated September 26, 2012, indicated [Plaintiff's] physical examination was within normal limits, except some hearing loss. Examination of the ears noted tympanic membranes visible with good light reflexes. There was no erythema or bulging. Mental status examination noted [Plaintiff] had good eye contact, and speech/tone was low. There was no evidence of psychosis and paranoia. His mood and affect was [sic] depressed, and occasionally tearful. Diagnosis included depressive disorder, and was started on Lexapro.

On October 1, 2012, Dr. Ehsani noted [Plaintiff's] physical examination was unremarkable. There was no pitting edema, varicose veins, or cording. Range of motion of joints was full and no effusion or swelling or crepitus noted. Skin showed no abnormal rash, jaundice, or bruising. Neurologically, [Plaintiff] was alert and oriented times three. Cranial nerves were intact and motor strength was 5/5 bilaterally both upper and lower extremities. Sensory was intact and [Plaintiff] had no evidence of psychosis and paranoia. His mood was depressed, and occasionally tearful.

R. at 18-19 (citations omitted); *see* R. at 352-54, 361-87.

**C.     Debby Miller, Au.D. (The Kaplan Hearing Center)**

The ALJ summarized the findings of Dr. Debby Miller in his decision:

Hearing test performed on November 2, 2012, by Dr. Debby Miller, at Kaplan Hearing Center, noted [Plaintiff] had moderately severe sensorineural hearing loss bilaterally. Word recognition ability was elevated levels was fair [sic] at 72% in the right ear and 74% in the left ear. Speech reception thresholds were 65 in the right ear and 60 in the left ear. Impedance measures revealed normal middle ear pressures and compliance bilaterally. Dr. Miller indicated [Plaintiff's] test results showed progressive sensorineural hearing loss with only fair word recognition ability. It was recommended [Plaintiff] obtain a hearing aid evaluation and trial of hearing aids.

R. at 19-20; *see* R. at 507-08.

**D.**     **Shamsia Ally, M.D.**

On November 28, 2012, Dr. Ally completed a Mental Impairment Questionnaire.  R. at

511-15, 521-25.  The ALJ summarized in his decision Dr. Ally's opinion:

> On November 28, 2012, Dr. Shamsia Ally completed a Mental Impairment
> Questionnaire indicating treating [Plaintiff] one and a half months, every one to
> two weeks.  Dr. Ally noted [Plaintiff's] diagnosis included bipolar disorder,
> hearing impairment, and back problems.  His GAF score was noted to be 50,
> which is defined as serious symptoms or any serious impairment in social,
> occupational, or school functioning. . . . Prognosis was fair to poor and [Plaintiff]
> did not have any other psychiatric condition that exacerbated experience of pain
> or any other physical symptoms.  Dr. Ally indicated [Plaintiff] would miss more
> than three days a month for impairment exacerbation or treatment. . . . Dr. Ally
> indicated [Plaintiff] had moderate limitations in activities of daily living, marked
> difficulties in social functioning, frequent episodes of deficiencies of
> concentration, and repeated episodes of decompensation, each of extended
> duration.  Dr. Ally opined his findings were based on [Plaintiff] experiencing
> fears of being in close places or in high places and fears driving [sic].  As for his
> social interactions, his hearing affects his ability to socialize.

R. at 20.

**E.**     **Hearing Testimony**

**1.**     **Plaintiff's Testimony**

In his decision, the ALJ reviewed Plaintiff's testimony as follows:

> At the hearing, [Plaintiff] testified he suffered from hearing loss, for which he
> used a hearing aide [sic].  His hearing aide [sic] picks up background noise and he
> can't afford to replace them.  He testified that his hearing troubles started in his
> childhood.  [Plaintiff] indicated that he worried about everything, worsening three
> years prior.  In 2003, he was prescribed Lexapro for depression and in 2010,
> prescribed Xanax.  [Plaintiff] testified no longer taking Lexapro, and suffered [a]
> full-blown panic attack.  In addition, he reported having gained 35 pounds in [the]
> past year.  As for his ability to sleep, [Plaintiff] indicated that he has not had a
> "good night's sleep" in over ten years.   [Plaintiff] reported difficulty with
> depression over [the] holidays.  He noted crying spells at times, five to six times a
> month, since 2010.  [Plaintiff] testified that he played guitar one to two times in
> [the] past year.  He indicated having thoughts of doom entering [his] head.
> [Plaintiff] indicated using GPS to get to [the] hearing.  He reported being on edge
> and stresses [sic] out, with inability to cope, and feelings of being overwhelmed.
> [Plaintiff] testified that he drives, shops, reads, and uses a computer to "surf" the
> internet.  He stated that he cooks, washes dishes, sweeps, mops, does laundry,

makes beds, and vacuums.  [Plaintiff] reported [the] ability to handle his personal needs.  Approximately forty-five minutes into the hearing, [Plaintiff] indicated that he was limited to sitting 10 to 15 minutes, standing 20 minutes, walking ½ a mile, and had the ability to lift more than 25 pounds (testimony).

R. at 18; *see* R. at 32-59.

### 2.     VE Testimony

According to the VE, Plaintiff's past work as an estimator and manager is skilled and sedentary, and his past work as a service dispatcher is semi-skilled and sedentary.[2]  R. at 60-61. The VE further testified that a hypothetical person with Plaintiff's same age, education, and work experience and with the RFC as outlined by Dr. Hakkarinen could perform Plaintiff's past relevant work as well as jobs at the medium exertional level[3] such as a dining-room attendant, order filler, and self-service laundry attendant.  R. at 61-63.  Such a hypothetical person further limited to occasional interaction with coworkers or the public and to routine, repetitive, and simple tasks could still perform these three jobs, but not Plaintiff's past relevant work.  R. at 63. Finally, a person absent from work three or more times a month could not maintain any work.  R. at 65-66.

### III

### Summary of ALJ's Decision

On March 21, 2013, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of November 21, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."   20 C.F.R.  §§ 404.1567(a), 416.967(a).

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a dining-room attendant, order filler, or self-service laundry attendant.  R. at 15-22.  The ALJ accordingly found that he was not disabled from November 21, 2011, through the date of the decision.  R. at 23.

In so finding, the ALJ found that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except lift/carrying up to fifty pounds occasionally and twenty-five pounds frequently, sitting about six hours, and standing/walking six hours in an eight hour workday. [Plaintiff] can never climb ladders, scaffolds, or ropes, and has limited ability to hear.  He must avoid concentrated exposure to noise and hazards.  Additionally, he is to have only occasional interaction with co-workers or the public and [is] limited to routine, repetitive, simple tasks.

R. at 17.

The ALJ found that Plaintiff's severe impairments included hearing loss and bipolar disorder.  R. at 15.  In considering the severity of Plaintiff's mental impairments, the ALJ found that Plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties regarding concentration, persistence, or pace; and experienced no episodes of decompensation of extended duration.  R. at 16-17.  Because the criteria of paragraphs B and C of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 ("Listing 12.04") were not satisfied, the ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listing 12.04.  R. at 16-17.

Further, regarding Plaintiff's credibility, the ALJ found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not

entirely credible for the reasons explained in [the ALJ's] decision."  R. at 20.  "[E]ven after giving [Plaintiff] the benefit of the doubt, I find that there is no evidence of record to substantiate [Plaintiff's] mental conditions as producing any more than, at most, mild-to-moderate limitations on his ability to engage in basic work activities."  R. at 21.

The ALJ also weighed the opinion evidence in the record, giving (1) "great weight" to Dr. Ehsani's opinion because the doctor "offered opinions that are supported by objective medical evidence and are consistent with other substantial evidence of record"; (2) "significant weight" to Dr. Miller's opinion; and (3) little weight to Dr. Ally's opinion because it was "inconsistent" and "not supported by the record."  R. at 21.  Specifically, the ALJ found the following:

> Dr. Ally's assessment is not afforded much probative value because it is not supported by the record.  There is no evidence of psychiatric treatment other than him taking Xanax until November 2012.  Dr. Ally indicated "poor to none" for remembering work-like procedures and understanding, remembering very short and simple instructions, yet "fair" in carrying out very short and simple instructions.  This clearly is inconsistent.  The doctor checked repeated decompensation yet had only [seen Plaintiff] twice in one month, and his records fail to support any decompensations.  Only records are for five visits to Way Station.  Dr. Ally had seen [Plaintiff] only one time prior to his assessment, on November 20, 2012.

R. at 21.

## IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),  1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

---

appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

**A.    Listing 12.04**

Plaintiff maintains that his mental impairments meet or equal Listing 12.04. Pl.'s Mem. Supp. Mot. Summ. J. 4-5, ECF No. 14-1.[5]   The ALJ found, however, that the criteria of paragraph B of Listing 12.04 were not satisfied because Plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties regarding concentration, persistence, or pace; and experienced no episodes of decompensation of extended duration. R. at 16-17.

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.' A

---

[5] The Commissioner points out that Plaintiff incorrectly refers to Listing 14.09 in his Motion for Summary Judgment.  Pl.'s Mem. Supp. Mot. Summ. J. 4, 6, ECF No. 14-1; Def.'s Mem. Supp. Mot. Summ. J. 19 n.11, ECF No. 16-1.

claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be

disabled.   If not, the reviewing authority will then assess the claimant's RFC.   *Id.*
§§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."   20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.   [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."   *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.   Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."   *Id.* § 12.00(C)(2).   Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.   In psychological tests of intelligence or memory, concentration is assessed

through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[*e*]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Paragraph B of Listing 12.04, which relates to affective disorders, requires at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Id.* § 12.04(B). "Marked" "means more than moderate but less than extreme." *Id.* § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Here, the ALJ found that Plaintiff had mild restriction in activities of daily living because he

> testified that he is independent in personal care, able to go to the store every one or two weeks and occasionally helps with household chores.  He also reported he engages in activity of daily living of his own initiative.  There is no medical evidence that indicates that he is unable to care for himself independently.

R. at 16.  The ALJ also found that Plaintiff had moderate difficulties in social functioning because, although he "indicated difficulty getting along with others due to hearing loss," Plaintiff "has interacted appropriately at all examinations of record, as well as at the hearing."  R. at 16.  The ALJ further found that Plaintiff had moderate difficulties with regard to concentration, persistence, or pace because there "is no evidence of record that he has any significant thought disorder or cognitive deficits."  R. at 16.  "Additionally, during the hearing, he exhibited no significant deficits in memory, attention, or concentration and his testimony was generally responsive, coherent, and without any apparent lapses of attention."  R. at 16.  The ALJ finally found that Plaintiff had experienced no episodes of decompensation of extended duration.  R. at 17.  The ALJ accordingly found that the criteria of paragraph B of Listing 12.04 were not satisfied.  R. at 17.

Plaintiff contends that the ALJ erred in relying on personal observation in considering the four functional areas, particularly Plaintiff's limitations in social functioning.  Pl.'s Mem. Supp. Mot. Summ. J. 5, ECF No. 14-1.  However, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."  *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984).  Moreover, Plaintiff has not disputed the ALJ's proper consideration of his reported daily living activities in determining his credibility, *see Johnson*, 434 F.3d at 658; *Gross v. Heckler*,

785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam), and so he has waived this argument. *See United States v. Jones*, 308 F.3d 425, 427 n.1 (4th Cir. 2002).

Plaintiff nonetheless asserts that the opinion of Dr. Ally, as his treating physician, "should be given complete deference" and that accordingly he "should be found disabled as a matter of law." Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 14-1. However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Moreover, "the testimony of a non-examining physician can be relied upon when it is consistent with the record. Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand." *Smith*, 795 F.2d at 346 (citation omitted).

Here, the ALJ afforded little weight to Dr. Ally's opinion because it was not supported by the record. R. at 21. The AJ noted no evidence of psychiatric treatment other than Plaintiff's taking Xanax until November 2012. R. at 21. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007); *see Gross*, 785 F.2d at 1166 ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."). The ALJ further noted that Dr. Ally's opinion inconsistently rated Plaintiff's ability to understand and remember very short and simple instructions as "poor to none," but his ability to carry out such instructions as "fair" (R. at 21, 513). *See Craig*, 76 F.3d at 590 (upholding ALJ's rejection of treating physician's opinion because record contained persuasive contradictory evidence and treating

physician's own notes contradicted his opinion).   The ALJ also appropriately considered the length of Dr. Ally's treatment relationship with Plaintiff and the frequency of examination.  *See Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) ("When deciding 'how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations.'"); *Burch v. Apfel*, 9 F. App'x 255, 260 (4th Cir. 2001) (per curiam) ("[T]he ALJ clearly stated why [the treating psychiatrist's] opinion was entitled to little weight, and the ALJ exhaustively discussed the numerous inconsistencies that called [the treating psychiatrist's] testimony into doubt.   Accordingly, the ALJ's treatment of [the treating psychiatrist's] opinion is in accord with the regulations and supported by substantial evidence in the record."); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (claimant's physicians' "opinions are not entitled to deference because as one-time examiners they were not treating physicians"); 20 C.F.R.  §§ 404.1527(c)(2)(i),  416.927(c)(2)(i).   Accordingly, because the ALJ properly discounted Dr. Ally's opinion, Plaintiff's contention regarding the weight given to the doctor's opinion by the ALJ is unavailing.

**B.      Sentence Six Remand**

Plaintiff contends, however, that Dr. Ally's records attached to his Motion for Summary Judgment (ECF No. 14-2) from October 18, 2012, to October 5, 2013, constitute new and material evidence warranting remand to the Commissioner under the sixth sentence of 42 U.S.C. § 405(g).   Pl.'s Mem. Supp. Mot. Summ. J. 3-4, ECF No. 14-1.   Defendant maintains that Plaintiff provides no good cause for the introduction of these records, which, in any event, are not material because they further support the ALJ's decision.   Def.'s Mem. Supp. Mot. Summ. J. 15-17, ECF No. 16-1.

The sixth sentence of 42 U.S.C. § 405(g) provides:

The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).  In other words, under the sixth sentence of § 405(g), "the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding."  *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S. Ct. 2157, 2163 (1991).  Thus, a claimant "must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier."  *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 n.3 (4th Cir. 1991) (en banc).  Evidence is new if it is not duplicative or cumulative, *id.* at 96, and it must relate to the period on or before the date of the ALJ's decision.  *See* 20 C.F.R. §§ 404.970(b), 416.1470(b).[6]

---

[6] Plaintiff maintains that the four-part test delineated in *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), applies here, which this Court and the Fourth Circuit also have applied previously.  *See Miller v. Barnhart*, 64 F. App'x 858, 859-60 (4th Cir. 2003) (per curiam); *Osborne v. Astrue*, Civil Action No. TMD 11-1124M, 2013 WL 436512, at *3 & n.1 (D. Md. Feb. 4, 2013).  Under the *Borders* test, a remand based on newly discovered evidence is warranted if (1) the evidence is relevant to the determination of disability at the time the application was first filed and not merely cumulative; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has made at least a general showing of the nature of the new evidence to the reviewing court.  *See Borders*, 777 F.2d at 955.  The Commissioner points out, however, that "[t]he first requirement articulated in *Borders* appears

The Court finds that the evidence attached to Plaintiff's Motion for Summary Judgment is not material because it would not have changed the administrative outcome. Despite Plaintiff's contention that Dr. Ally's "subsequent reports are material to the decision" because the "Commissioner's decision put emphasis on the length of the treatment relationship" (Pl.'s Mem. Supp. Mot. Summ. J. 4, ECF No. 14-1), these additional medical records further demonstrate the inconsistency between Dr. Ally's opinion and the doctor's own treatment notes. Although Dr. Ally opined in November 2012 that Plaintiff suffered from poor memory and that his memory and concentration affected his ability to pay attention to tasks at hand (R. at 511, 514), the doctor's treatment notes in June, July, August, and September 2013 after the ALJ's decision indicate that Plaintiff's attention and concentration were normal and that his memory was intact (ECF No. 14-2 at 13, 21, 28, 45). Further, before the ALJ issued his decision, Dr. Ally noted in January 2013 that Plaintiff's memory was intact and that his attention and concentration were within normal limits. ECF No. 14-2 at 62-63. Because this additional evidence would not have changed the ALJ's consideration of Dr. Ally's opinion, Plaintiff's motion for a remand under the sixth sentence of 42 U.S.C. § 405(g) is **DENIED**.

## C.      The Grids

Plaintiff finally asserts that the ALJ should have found him disabled under 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06 ("grid rule 202.06") (Pl.'s Mem. Supp. Mot. Summ. J. 5-6, ECF No. 14-1), although the ALJ found that grid rule 203.07 did not apply (R. at 22).

Appendix 2 consists of tables or "grids" that indicate the proper disability determinations for various combinations of age, education, and previous work

---

contrary to section 405(g), as amended, and as discussed by the Supreme Court" in *Melkonyan*. Def.'s Mem. Supp. Mot. Summ. J. 15 n.8, ECF No. 16-1. Regardless of the formulation of the rule for a sentence six remand, Plaintiff does not demonstrate the materiality of the evidence attached to his Motion for Summary Judgment, as discussed above.

experience in conjunction with the individual's residual functional capacity, i.e., his maximum capacity for sustained performance of the physical and mental requirements of jobs.  In selecting the proper table, only the physical exertional or strength limitation portion of residual functional capacity the ability to do sedentary, light, medium, heavy, or very heavy work is considered.  Where the findings as to all factors then coincide with the criteria of a particular rule, the rule is conclusive.  Where they do not coincide, the rule serves as a guideline along with the principles and definitions in the regulations, and full consideration must be given to all relevant facts in the case.  Where nonexertional limitations (mental, sensory, or skin impairments) the other portion of residual functional capacity are present [sic], alone or in combination with strength limitations, the factors cannot coincide precisely with a rule.  In addition, the rules are not conclusive where a combination of impairments limits the range of work that an individual can perform at a given exertional level.  Finally, the regulations provide that the claimant may present evidence to rebut the ALJ's findings of fact with respect to vocational factors and residual functional capacity.

The tables in Appendix 2 also reflect the existence of unskilled jobs in the national economy at various functional levels (sedentary, light, medium, heavy, and very heavy), by incorporating administrative notice of various occupational publications and studies.

*Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981) (citations omitted).

Grid rule 203.07 applies to individuals who are capable of performing medium work, are "closely approaching retirement age," have graduated from high school, and have a non-transferable skilled or semi-skilled work history.  20 C.F.R. pt. 404, subpt. P, app. 2, § 203.07.  As the ALJ noted, an individual would be found not disabled under this rule if that individual could perform the full range of medium work.  R. at 22.  On the other hand, grid rule 202.06 applies to individuals who are capable of performing light work,[7] are of "advanced age," have graduated from high school, and have a non-transferable skilled or semi-skilled work history.  20 C.F.R. pt. 404, subpt. P, app. 2, § 202.06.  Such individuals are found to be disabled.  *Id.*; *see* 20

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  *Id.*

C.F.R. §§ 404.1568(d)(4), 416.968(d)(4) (regarding transferability of skills for persons of advanced age). In this regard, the regulations define "advanced age" as age 55 or older and "closely approaching retirement age" as age 60 or older. 20 C.F.R. §§ 404.1563(e), 416.963(e). Plaintiff was 60 years old at the time of the administrative hearing and thus closely approaching retirement age.

Plaintiff essentially argues that the ALJ erred in assessing his RFC because the ALJ stated in his decision that Plaintiff's RFC included the capacity "to perform medium work . . . except lift/carrying up to fifty pounds occasionally and twenty-five pounds frequently, sitting about six hours, and standing/walking six hours in an eight hour workday." R. at 17. According to Plaintiff, because the ALJ found that he "is unable to lift/carry up to fifty pound[s] occasionally and 25 pounds frequently," he "would be unable to do medium work." Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 14-1. Plaintiff contends that the ALJ should have found instead that he was limited to performing light work. *Id.*

Plaintiff's argument is without merit. Despite the ALJ's "inartfully worded" decision, as the Commissioner now concedes (Def.'s Mem. Supp. Mot. Summ. J. 19, ECF No. 16-1), the ALJ clearly found that Plaintiff is capable of lifting 50 pounds occasionally and 25 pounds frequently, before including a number of nonexertional limitations in the RFC assessment (R. at 17). Although Plaintiff's argument relies on a scrivener's error, he does not dispute that substantial evidence in the record supports the ALJ's finding that he is capable of performing medium work. R. at 83, 339. That the ALJ's hypothetical questions to the VE at the hearing considered a limitation to medium work (R. at 61-63) further militates against determining that the ALJ found that Plaintiff was incapable of performing work at that exertional level.

In any event, the burden is on the party attacking an agency's determination to show that prejudice resulted from the error. *Shinseki v. Sanders*, 556 U.S. 396, 409-10, 129 S. Ct. 1696, 1705-06 (2009); *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) ("Where harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm."); *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("[R]eversal is not required when the alleged error 'clearly had no bearing on the procedure used or the substance of [the] decision reached.'" (quoting *Mass. Trs. of E. Gas & Fuel Assocs. v. United States*, 377 U.S. 235, 248, 84 S. Ct. 1236, 1245 (1964))). "[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999); *see Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (Posner, J.) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Because Plaintiff does not demonstrate prejudice as a result of the ALJ's error, Plaintiff's contention is without merit.

In short, substantial evidence supports the decision of the ALJ, who applied the correct legal standards in this case. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's decision is **AFFIRMED**.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 16) is **GRANTED**. Plaintiff's Motion for Summary Judgment (ECF No. 14) and alternative motions

for remand under the fourth and sixth sentences of 42 U.S.C. § 405(g) are **DENIED**.   All other

pending motions are **DENIED AS MOOT**.   The Commissioner's decision is **AFFIRMED**.   A

separate order shall issue.


Date: June 18, 2014                                    _____/s/_____
                                                                          Thomas M. DiGirolamo
                                                                          United States Magistrate Judge